IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DARYA DEARING, JANICE GULLICK,    )
RICHARD A. HAYNES, NELSON         )
SIEVERS, and LAUREN BROWN,        )
individually and as               )
representatives of a class        )
of similarly situated persons,    )
on behalf of the IQVIA            )
401(K) Plan,                      )
                                  )
         Plaintiffs,              )
                                  )
    v.                            )      1:20CV574
                                  )
IQVIA INC., THE BOARD OF          )
DIRECTORS OF IQVIA HOLDINGS,      )
INC., THE BENEFITS INVESTMENT     )
COMMITTEE, and JOHN DOES No.      )
1-20, Whose Names Are             )
Currently Unknown,                )
                                  )
         Defendants.              )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is a Renewed Motion to Dismiss the Amended Complaint filed by Defendants IQVIA Inc., the Board of Directors of IQVIA, and the IQVIA Benefits Investment Committee (together "Defendants"). (Doc. 18.) Plaintiffs responded in opposition, (Doc. 22), and Defendants filed a reply, (Doc. 23). Defendants move to dismiss Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 12(b)(6).

For the reasons set forth herein, this court will deny Defendants' motion.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). The facts, taken in the light most favorable to Plaintiffs, are as follows.

Plaintiff IQVIA, Inc. ("IQVIA") sponsors a qualified tax-deferred, defined contribution retirement plan ("the Plan") for participating employees. (Am. Complaint ("Am. Compl.") (Doc. 17) ¶¶ 2, 4, 24.) This type of plan, commonly referred to as a 401(k), allows participants to direct their retirement savings contributions into various investment fund options offered by the Plan. (Id. ¶ 24.) The Plan is one of the largest in the nation, with over 21,000 participants and total assets over $1.6 billion. (Id. at ¶ 4.) Plaintiffs are participants, both past and present, in the Plan. (Id. ¶¶ 9-10, 12-14.) Defendants are fiduciaries of the Plan and responsible for its administration, including choosing the Plan's lineup of fund options. (Id. ¶ 5.) In particular, IQVIA's Board of Directors exercises discretionary authority over the Benefit Investment Committee, the entity "which ha[s] control over Plan management and/or

authority or control over management or disposition of Plan assets." (Id. ¶ 16.)

Stated broadly, Plaintiffs allege that two primary failings of the Plan since 2014 constitute breaches of Defendants' fiduciary duties of loyalty and prudence under the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1001, et seq. First, Plaintiffs allege Defendants are selecting and retaining underperforming funds in the Plan's lineup "causing Plan participants to miss out on greater investment returns for their retirement savings." (Id. ¶ 46; see also id. ¶¶ 30-39, 43-53.) Second, Plaintiffs allege Defendants are failing to adequately control the Plan's cost causing "participants [to] suffer harm to their retirement savings through the payment of needless extra fees." (Id. ¶ 59; see also id. ¶¶ 40-42, 54-59.)

### A.   Underperformance of Funds in the Plan's Lineup

Plaintiffs allege that Defendants are breaching their fiduciary duties by consistently selecting and retaining funds for the Plan's lineup that are unsuitable for the average retirement investor. (Id. ¶¶ 46, 49, 53.) The Plan's lineup features twenty-eight funds in total, (id. ¶ 54), and Plaintiffs allege that fourteen of these are so underperforming — when compared to funds simply tracking the market — that Defendants'

-3-

selection of them breached their fiduciary duties, (id. ¶¶ 46, 49, 53).

The Fidelity Freedom Funds Active Suite ("the Active Suite") accounts for twelve of these allegedly underperforming funds.[1] (Id. ¶ 29.) The Active Suite consists of "all-in-one" retirement target date funds, (id. ¶ 30), which "gradually shift[] to become more conservative as the assumed target retirement year approaches," (id. ¶ 29). The Active Suite is the Plan's default investment option, meaning that if participants do not themselves select funds from the lineup, all their contributions are automatically invested in an Active Suite fund. (Id. ¶ 32.) "Given that the vast majority of plan participants are not sophisticated investors, many of the Plan participants, by default, concentrate their retirement assets in target date funds. . . . Indeed, by December 31, 2018, approximately 54% of the Plan's assets were invested in the Active suite." (Id. ¶ 33.)

Plaintiffs allege that the Active Suite target date funds are underperforming when compared to the Fidelity Freedom Funds Index Suite ("the Index Suite") target date funds, which are not

---

[1] The other two allegedly underperforming funds are the Columbia Acorn USA Fund and the Prudential Jennison Mid Cap Growth Fund. (Am. Compl. (Doc. 17) ¶ 48-53.) Plaintiffs assert similar criticisms against these funds; namely, that Defendants should replace them with funds tracking the market. (Id.)

-4-

included in the Plan's lineup. Plaintiffs insist that "Defendants' decision to add the Active suite over the Index suite, and their failure to replace the Active suite with the Index suite at any point during the Class Period, constitutes a glaring breach of their fiduciary duties." (Id. ¶ 31.) "[B]y choosing to select and retain the Active suite," Defendants allegedly "caus[ed] Plan participants to miss out on greater investment returns" that the Index Suite could have generated. (Id. at 46.)

Plaintiffs argue that the Index Suite is an appropriate benchmark to measure the Active Suite's performance because the two Suites are similar in many ways — they are offered by the same investment management company, they share a management team, and appear to have near identical asset allocation strategies. (Id. ¶¶ 30, 31, 34.) The chief distinction between the Suites is that the Active Suite mainly invests in actively managed mutual funds, while the Index Suite invests in passive funds that simply track the market. (Id. ¶ 31.) Therefore, Plaintiffs argue that the Index Suite serves as an ideal benchmark to measure the Active Suite's performance; the Index Suite "is the control while the Active Suite, with its expanded discretion to the investment managers, is the variable." (Doc. 22 at 20.)

Plaintiffs allege that the Active Suite's investments are riskier than the Index Suite's, (Am. Compl. (Doc. 17) ¶ 34-39), and that this risk has not been worthwhile because "the Active suite has simply failed to measure up to the returns produced by its index cousin, in which the Plan participants' assets would be significantly better off." (Id. ¶ 45.) Plaintiffs note that "the Index suite has outperformed the Active suite . . . across every vintage of the fund families, [meaning that] the Index suite would have earned investors significantly greater sums." (Id. ¶ 46.) Third parties allegedly concur. (Id. ¶¶ 43-44.) An investment research organization gave the Index Suite a better ranking, (id. ¶ 44), and investors have allegedly decreased their investments in the Active Suite and increased their investments in the Index Suite. (Id. ¶ 43.)

### B. Excessive Cost of Funds in the Plan's Lineup

Plaintiffs also allege that Defendants breached their fiduciary duties by offering funds in the Plan that are too expensive. (Id. ¶¶ 40-42, 54-59.) Plaintiffs explain that "[e]ven a minor increase in a fund's expense ratio (the total annual cost to an investor, expressed as a percentage of assets) can considerably reduce long-term retirement savings." (Id. ¶ 40.)

Plaintiffs allege that at least seventeen of the funds in the Plan are "substantially more expensive than comparable funds found in similarly sized plans." (Id. ¶ 54.) Most of these overly expensive funds were from the Active Suite, which has much higher fees than the Index Suite. (Id. ¶ 40.)

In addition to replacing the Active Suite with the Index Suite, Plaintiffs specify two other ways Defendants should have lowered the Plan's expense ratio: (1) by replacing a fund with a cheaper alternative investment vehicle, known as a "collective trust," comprised of identical underlying investments, (id. ¶¶ 56-57); and (2) by replacing a fund's unnecessarily expensive share class with the least expensive class, as the classes are identical other than price, (id. ¶¶ 58-59). Plaintiffs insist that these cheaper options were available to Defendants because large institutional investors, such as the Plan, should be able to leverage their size in negotiations to get fund managers to agree to provide lower fee options. (Id. ¶¶ 26, 58.)

C. **Procedural History**

Plaintiffs filed their original complaint on June 23, 2020. (Doc. 1.) Defendants moved to dismiss it under Rule 12(b)(6). (Doc. 8.) Plaintiffs subsequently filed an Amended Complaint on September 25, 2020, asserting three counts: (I) breach of fiduciary duties; (II) failure to monitor fiduciaries and

-7-

Case 1:20-cv-00574-WO-JEP   Document 30   Filed 09/21/21   Page 7 of 15

co-fiduciaries; and, in the alternative, (III) knowing breach of trust. (Am. Compl. (Doc. 17) ¶¶ 79-95.)

Defendants renewed their Motion to Dismiss on October 23, 2020, (Doc. 18), and filed an accompanying Memorandum, (Doc. 19). Plaintiffs responded, (Doc. 22), and Defendants replied, (Doc. 23). In the ensuing months, both parties brought to this court's attention subsequent decisions in analogous ERISA cases. (Docs. 24-29.) This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." Est. of Williams-

-8-

Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. ANALYSIS

This court will deny Defendants' Rule 12(b)(6) Motion to Dismiss because Plaintiffs' factual allegations, taken as true, sufficiently state claims as to all three counts.

### A. Breach of Fiduciary Duties (Count I)

To allege a breach of ERISA's fiduciary duties of loyalty and prudence, Plaintiffs must allege three elements: "(1) the Plan is governed by ERISA; (2) Defendants were fiduciaries of the Plan; and (3) Defendants breached their [fiduciary] duties of prudence and/or loyalty under ERISA, resulting in losses to the participants of the Plan." Jones v. Coca-Cola Consol., Inc., No. 3:20-cv-00654-FDW-DSC, 2021 WL 1226551, at *4 (W.D.N.C. Mar. 31, 2021). Defendants do not contest that Plaintiffs' allegations satisfy the first and second elements, but they do argue that Plaintiffs have failed to sufficiently allege the

-9-

third element. (Memo. of Law in Supp. of Defs.' Renewed Mot. to Dismiss ("Defs.' Br.") (Doc. 19) at 12-27.)[2]

ERISA's fiduciary duties require plan fiduciaries to act:

(1) . . . solely in the interest of the participants and beneficiaries and –

    (A) for the exclusive purpose of:

        (i) providing benefits to participants and their beneficiaries; and

        (ii) defraying reasonable expenses of administering the plan; [and]

    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A), (B). These "fiduciary obligations of the trustees to the participants and beneficiaries of [an ERISA] plan are . . . the highest known to the law." Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 356 (4th Cir. 2014) (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

Plaintiffs allege Defendants breached these fiduciary duties because (1) certain actively managed funds in the Plan's lineup have consistently underperformed when compared to funds tracking the market, supra Part I.A, and (2) the Plan is too

---

[2]All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-10-

expensive, supra Part I.B. Courts have found similar factual allegations sufficient to allege ERISA breach of fiduciary duties claims. See, e.g., In re MedStar ERISA Litig., Civil Action No. RDB-20-1984, 2021 WL 391701, at *6 (D. Md. Feb. 4, 2021) ("[P]laintiffs' allegations that specific funds underperformed" compared to funds tracking the market plausibly stated a breach of fiduciary duty claim.); Jones, 2021 WL 1226551, at *4 n.3 ("Alleging that excessively high fees were charged to plan participants can independently constitute a breach of one's duties of prudence and/or loyalty under ERISA."); Kruger v. Novant Health, Inc., 131 F. Supp. 3d 470, 478 (M.D.N.C. 2015) ("[T]he plaintiff alleged that the plan fiduciaries were utilizing imprudently expensive investment options to the detriment of the plan. Following this logic, present Plaintiffs have stated enough of a claim for breach of fiduciary duty to survive Defendants' motion to dismiss.").

Nevertheless, Defendants argue that Plaintiffs' allegations of fund underperformance fail as a matter of law because they are made by comparing actively managed funds (e.g., the Active Suite) to funds simply tracking the market (e.g., the Index Suite) — an allegedly "apples and oranges" comparison. (Defs.' Br. (Doc. 19) at 18 (quoting Davis v. Wash. Univ., 960 F.3d 478, 485 (8th Cir. 2020)).) However, Defendants' argument raises

factual questions and thus is premature. "Courts have specifically held that the determination of the appropriate benchmark for a fund is not a question properly resolved at the motion to dismiss stage." MedStar, 2021 WL 391701, at *6. Accordingly, this court finds the comparison sufficient at this preliminary juncture to state a plausible claim for breach of fiduciary duties due to underperformance.

Defendants also argue that the Plan's costs fell within an acceptable range as a matter of law, and thus Plaintiffs have failed to sufficiently allege the Plan was too expensive. (Defs.' Br. (Doc. 19) at 20-22, 27.) A court in this circuit recently rejected this argument in a similar case. See Jones, 2021 WL 1226551. In Jones, the plaintiffs alleged facts and claims near identical to the ones Plaintiffs assert here — including those concerning the cost savings of converting to collective trusts and utilizing the cheapest share class available. Id. at *1-2, *5. The district court in Jones held that the "Plaintiffs' factual allegations regarding [the] Defendants' alleged failure to utilize cheaper investments that offer identical underlying investments [namely, a collective trust and a cheaper share class] sufficiently state[d] a claim for breach of fiduciary duty." Id. at *5. Given Jones' similarity to the claims asserted here, (Am. Compl. ¶¶ 56-59),

-12-

this court likewise finds that Plaintiffs' allegations of excessive cost suffice to state a fiduciary duty breach claim.

Therefore, Plaintiffs have sufficiently alleged that Defendants breached their fiduciary duties on the grounds of underperformance and excessive cost, and accordingly, this court will deny Defendants' Motion to Dismiss Count I.

### B.  Failure to Monitor Fiduciaries (Count II)

Plaintiffs allege Defendant IQVIA failed to adequately monitor the Benefit Investment Committee and that the Committee itself failed to monitor its own members, leading to "enormous losses as a result of the [members'] imprudent actions." (Id. ¶ 89(a).) The power "'to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of [ERISA, 29 U.S.C.] § 1002(21)(A),' and such authority 'carries with it a duty 'to monitor appropriately' those subject to removal.'" MedStar, 2021 WL 391701, at *7 (quoting Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir. 1996)).

Defendants argue that Plaintiffs' monitoring claim must be dismissed because it is derivative of a deficient underlying fiduciary duty claim. (Defs.' Br. (Doc. 19) at 28.) However, because this court has already found that Plaintiffs' fiduciary duty claim is factually sufficient, see supra Part III.A, this

-13-

Case 1:20-cv-00574-WO-JEP   Document 30   Filed 09/21/21   Page 13 of 15

argument fails. Defendants also argue that Plaintiffs have not alleged "specific facts regarding the monitoring process or how it might have been deficient." (Id.) In actuality, Plaintiffs have alleged such facts, (Am. Compl. (Doc. 17) ¶¶ 16, 84-92), but regardless "an analysis of the precise contours of the defendants' duty to monitor . . . is premature" at the motion to dismiss stage. Jones, 2021 WL 1226551, at *5 (internal quotation marks omitted) (quoting In re M&T Bank Corp. ERISA Litig., No. 16-CV-375 FPG, 2018 WL 4334807, at *31 (W.D.N.Y. Sept. 11, 2018)).

Therefore, Plaintiffs have sufficiently alleged a failure to monitor claim, and accordingly, this court will deny Defendants' Motion to Dismiss Count II.

### C. Knowing Breach of Trust (Count III)

If any of the Defendants are found not to be fiduciaries of the Plan under ERISA, Plaintiffs claim these Defendants should still be held liable for knowing breaches of trust because they possessed information to avoid the fiduciary breaches but nevertheless knowingly participated in them. (Am. Compl. (Doc. 17) ¶ 93-95.) Defendants argue that this claim should be dismissed "for want of any factual detail," especially detail indicating that Defendants had knowledge of unlawful transactions. (Defs.' Br. (Doc. 19) at 29.)

-14-

But, in both MedStar, 2021 WL 391701, at *7, and Jones, all that was required for "a knowing breach of trust claim [to] survive[] a motion to dismiss" were allegations that "Defendants' roles and relationships would place them in a position to know of nonfeasance or malfeasance of the others." Jones, 2021 WL 1226551, at *5. Here, Defendants have made such allegations. (Am. Compl. (Doc. 17) ¶¶ 5, 16-18, 93-95.) Therefore, Plaintiffs have sufficiently alleged a knowing breach of trust claim, and accordingly, this court will deny Defendants' Motion to Dismiss Count III.

IV. CONCLUSION

For the foregoing reasons, this court finds that Defendants' Renewed Motion to Dismiss should be denied.

**IT IS THEREFORE ORDERED** that Defendants' Renewed Motion to Dismiss the Amended Complaint, (Doc. 18), is **DENIED.**

This the 21st day of September, 2021.

/s/ William L. Osteen, Jr.
_____
United States District Judge

-15-

Case 1:20-cv-00574-WO-JEP Document 30 Filed 09/21/21 Page 15 of 15