**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DARYA DEARING, *et al.*,

        Plaintiffs,

    v.

IQVIA, INC., *et al.*,

        Defendants.

Case No. 1:20-cv-00574-WO-JEP

May 15, 2024

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF
<u>CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

THE BOTTOM LINE UP FRONT ........................................................................................ 1

BACKGROUND ..................................................................................................................... 2

STANDARD OF REVIEW .................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.      Certification of a Settlement Class is Appropriate ....................................... 7

          A.       The Settlement Class Satisfies Rule 23(a) ...................................... 8

                    1.      Numerosity ................................................................................. 8

                    2.      Commonality ............................................................................. 9

                    3.      Typicality ................................................................................. 11

                    4.      Adequacy ................................................................................. 12

           B.       The Settlement Class Satisfies Rule 23(b)(1) ................................ 13

          C.       Miller Shah and Capozzi Adler Should be Appointed as Class Counsel ............................................................................................ 14

    II.     The Settlement, Notice Plan, and Plan of Allocation Warrant Preliminary Approval ....................................................................................................... 15

          A.       The Settlement Should be Preliminarily Approved ...................... 15

          B.       The Notice Plan Should be Preliminarily Approved ...................... 17

          C.       The Plan of Allocation Should be Preliminarily Approved ............ 18

CONCLUSION ..................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Sitel Operating Corp.*,
 2019 WL 13296014 (M.D.N.C. Jan. 24, 2019) .................................................................8

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ............................................................................................... Passim

*Baltimore v. Laborers' Int'l Union of N. Am.*,
 1995 WL 578084 (4th Cir. Oct. 2, 1995) ..........................................................................8

*Brady v. Thurston Motor Lines*,
 726 F.2d 136 (4th Cir. 1984) ............................................................................................8

*Clark v. Duke Univ.*,
 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ..........................................10, 11, 12, 14

*Cunningham v. Cornell Univ.*,
 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) .............................................................9, 11

*DiFelice v. U.S. Airways, Inc.*,
 235 F.R.D. 70 (E.D. Va. 2006) .................................................................................9, 10

*Eisen v. Carlisle and Jacquelin*,
 417 U.S. 156 (1974) .......................................................................................................17

*Flinn v. FMC Corp.*,
 528 F.2d 1169 (4th Cir. 1975) ........................................................................................15

*Gaston v. LexisNexis Risk Solutions, Inc.*,
 2021 WL 244807 (W.D.N.C. Jan. 25, 2021) ................................................6, 7, 15, 16

*Gould v. Alleco, Inc.*,
 883 F.2d 281 (4th Cir. 1989) ..........................................................................................15

*Gunnells v. Healthplan Servs., Inc.*,
 348 F.3d 417 (4th Cir. 2003) ............................................................................................6

ii

*Haywood v. Barnes*,
   109 F.R.D. 568 (E.D.N.C. 1986)......................................................................8

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   855 F. Supp. 825 (E.D.N.C. 1994)........................................................15, 16, 17

*In re Jiffy Lube Secs. Litig.*,
   927 F.2d 155 (4th Cir. 1991)......................................................................7, 16

*Krueger v. Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014)....................................................................11

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017)....................................................................10

*Lienhart v. Dryvit Systems, Inc.*,
   255 F.3d 138 (4th Cir.2001)..........................................................................9

*Mass Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985)....................................................................................12

*Moreno v. Deutsche Bank Am. Holding Corp.*,
   2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)............................................10, 13

*Mullane v. Central Hanover Bank and Trust Co.*,
   339 U.S. 306 (1950)....................................................................................17

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)....................................................................................14

*Sacerdote v. New York Univ.*,
   2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)............................................10, 11

*Surowitz v. Hilton Hotels Corp.*,
   383 U.S. 363 (1966)....................................................................................13

*Tatum v. R.J. Reynolds Tobacco Co.*,
   254 F.R.D. 59 (M.D.N.C. 2008)...............................................................7, 8, 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...............................................................................9, 10, 11

iii

*West v. Continental Auto., Inc.*,
  2018 WL 1146642 (W.D.N.C. Feb. 5, 2018) ..................................................7, 13, 15

**Statutes**

29 U.S.C. § 1104(a)(1) ...................................................................................................9

29 U.S.C. §§ 1109(a), 1132(a)(2) .................................................................................12

**Rules**

Fed. R. Civ. P. 23(a) ...............................................................6, 8, 9, 11, 12, 13

Fed. R. Civ. P. 23(b) ...................................................................................6, 13, 14

Fed. R. Civ. P. 23(c) .................................................................................................17

Fed. R. Civ. P. 23(e) ..........................................................................7, 17, 18

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................14

Plaintiffs, Darya Dearing, Janice Gullick, Nelson Sievers, and Lauren Brown (collectively, "Plaintiffs"), individually and on behalf of the certified Class and the IQVIA 401(k) Plan, formerly known as the Quintiles 401(k) Plan (the "Plan"), respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"), requesting the Court issue an Order that: (1) preliminarily approves the Settlement Agreement dated May 15, 2024 with Defendants, IQVIA Inc., the Board of Directors of IQVIA Holdings Inc., and the Benefits Investment Committee (collectively, "Defendants");[1] (2) preliminarily certifies the proposed Settlement Class;[2] (3) approves the proposed notice plan ("Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least 140 days after the entry of the proposed Preliminary Approval Order.

## THE BOTTOM LINE UP FRONT

The Parties have agreed to a proposed settlement ("Settlement") of this ERISA action for total relief of $3,500,000.00, as well as certain additional relief related to the

---

[1] The Settlement Agreement and its exhibits are attached to the accompanying Declaration of Alec J. Berin. Terms not defined herein shall have the same meaning as in the Settlement Agreement.

[2] "Settlement Class" means all participants and beneficiaries of the Plan at any time during the Class Period, including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period, and any Alternate Payees of a person subject to a QDRO who was a participant in the Plan at any time during the Class Period. The Class shall exclude all Defendants. This definition is intended to be coextensive with the class certified in the Court's May 12, 2022 Findings and Order Certifying Class (ECF No. 55) granting Plaintiffs' motion for class certification. *See* Settlement Agreement § 1.48.

1

administration of the Settlement, which will provide a substantial recovery to members of the Settlement Class. In light of the substantial Settlement recovery and the risks of continued litigation, Class Counsel believe the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

Plaintiffs and Class Counsel have vigorously pursued relief on behalf of the Plan. The Parties agreed to the Settlement after briefing several dispositive and procedural motions, engaging in full fact and expert discovery, beginning preparation for the bench trial tentatively set for September 3, 2024, and arm's-length negotiations by experienced counsel, including at a private mediation session with an experienced mediator. Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

As set forth below, all prerequisites for preliminary approval of the Settlement, as well as preliminary certification of the Settlement Class, are satisfied. As such, the Motion should be granted and notice should be provided to the Participants in accordance with the proposed Notice Plan.

## **BACKGROUND**

Plaintiffs allege that Defendants are fiduciaries of the Plan and breached duties owed to the Plan and its participants and beneficiaries by: (1) selecting and retaining imprudent investments in the Plan; (2) causing the Plan to pay unreasonable investment management fees; and (3) failing to appropriately monitor certain service provider

2

relationships. *See* Amend. Compl., ECF No. 17, ¶¶ 6, 29–59. Plaintiffs' allegations are set forth in full in the Amended Complaint, which Plaintiffs filed on September 25, 2020. Defendants moved to dismiss on October 23, 2020 (ECF No. 18). The Court denied Defendants' motion to dismiss on September 21, 2021 (ECF No. 30) and the parties commenced discovery.

The Parties have engaged in significant discovery efforts, including the exchange of written discovery requests and production of tens of thousands of pages of documents related to Plan administration and Defendants' alleged conduct. *See* Berin Decl., ¶ 6. Defendants have taken Plaintiffs' depositions, and Plaintiffs have taken depositions of numerous fact witnesses. *See id.* In addition, the Parties exchanged expert reports related to issues of liability and damages and deposed each expert anticipated to testify at trial on behalf of an adverse party. *See id.*

Plaintiffs moved for class certification on April 18, 2022 (ECF No. 50), and the Court certified the Class, appointed Plaintiffs as Class Representatives, and appointed Miller Shah LLP and Capozzi Adler, P.C. as Class Counsel on May 12, 2022 (ECF No. 55). On January 9, 2023, Defendants moved for summary judgment on Plaintiffs' claims (ECF No. 69). On January 18, 2023, Defendants moved to exclude the expert reports and testimony of Plaintiffs' experts, Martin Dirks and W. Scott Simon (ECF Nos. 85, 89). Plaintiffs opposed all these motions on February 8, 2023 (ECF Nos. 98, 100, 102), and Defendants filed replies on February 22, 2023 (ECF Nos. 111, 115, 118). The motions were submitted to the Court on February 27, 2023.

The Court held a hearing on the motions on August 9, 2023, after which the Court denied Defendants' motions to exclude Plaintiffs' experts and granted in part and denied in part Defendants' motion for summary judgment (ECF No. 132). The Court requested further briefing on certain issues following oral argument, which the Parties supplied on September 8, 2023 (ECF Nos. 138, 141). The Parties filed responsive briefs on September 29, 2023 (ECF Nos. 149, 151).

While Plaintiffs' supplemental briefing was pending and as the Parties prepared for final pretrial filings, they also discussed the possibility of a negotiated resolution to the Action. Earlier in the course of the Action, the Parties held a mediation session with Robert A. Meyer, Esquire of JAMS, a well-respected neutral mediator who is experienced in mediating claims of the kind at issue in the Action (ECF No. 159). The Parties exchanged briefs prior to the mediation and additional information following the mediation, but were unable to reach an agreement. As part of the Parties' renewed discussions, the Parties communicated their positions regarding the merits of Plaintiffs' claims and Defendants' defenses, and the potential associated damages. The Parties continued their negotiations at a settlement conference on February 2, 2024, but again were unable to reach agreement. The Court then set a trial date for the Action of September 3, 2024. However, as the Parties began their final pre-trial preparation, they also continued their settlement efforts. The Parties finally reached an agreement in principle to resolve the Action on April 18, 2024, and worked to document the same in the Settlement Agreement (ECF No. 164).

The Settlement provides that, in exchange for dismissal of the Action and a release of claims, Defendants will make payment in an aggregate amount of $3,500,000.00 into a Qualified Settlement Fund to be allocated to participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation. *See* Settlement Agreement §§ 1.38, 4; Berin Decl., Ex. C. The Settlement Agreement and the proposed Preliminary Approval Order set forth the Notice Plan and describe Plaintiffs' anticipated requests for payment of attorneys' fees and litigation expenses to Class Counsel, as well as for case contribution awards to Plaintiffs, all of which are subject to the Court's approval. *See* Settlement Agreement § 6.1; Berin Decl., Ex. D. In addition, consistent with Department of Labor guidance pertaining to the release of claims on behalf of a qualifying benefits plan and to provide the Court an additional touchstone to assess the reasonableness of the Settlement, the Settlement Agreement provides for review and approval of the Settlement by an Independent Fiduciary. *See* Settlement Agreement § 2.1.

The Parties respectfully request that the Court schedule a Fairness Hearing, at or after which the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate, and merits final approval. Plaintiffs propose the following schedule associated with the Notice Plan and Fairness Hearing:

5

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, June 28, 2024 (or a date convenient for the Court within 45 days of the preliminary approval filing) |
| Settlement Administrator to set up settlement website and toll-free number | ¶ 9 | Within 30 days of entry of Preliminary Approval Order |
| Send Settlement Notice and Former Participant Claim Form to Class Members | ¶ 9 | Within 30 days of entry of Preliminary Approval Order |
| Final approval papers and fee request | ¶ 10 | 45 days before Fairness Hearing |
| Independent Fiduciary report | Settlement Agreement ¶ 2.1.2 | Not later than 45 days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 12 | On or before 30 days before the Fairness Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 12 | Not later than 7 days before Fairness Hearing |
| Fairness Hearing | ¶ 6 | On a date convenient for the Court no sooner than 140 days after the date the motion for entry of the Preliminary Approval Order is filed |

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 23, when the Court is presented with a proposed settlement, it must determine whether the proposed settlement class satisfies the requirements for class certification. *See Gaston v. LexisNexis Risk Solutions, Inc.*, 2021 WL 244807, at *5 (W.D.N.C. Jan. 25, 2021). In doing so, courts should "give Rule 23 a

liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties . . . and promote judicial efficiency." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003).

Class certification under Rule 23 has two primary components: a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). S*ee Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); Fed. R. Civ. P. 23. In addition, at the preliminary approval stage, the Court must evaluate the fairness, reasonableness, and adequacy of the settlement terms. *See Gaston*, 2021 WL 244807, at *5 (citing Fed. R. Civ. P. 23(e)(2)). In the Fourth Circuit, this analysis is bifurcated into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class. *See In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991). "In undertaking this analysis, the Court is mindful of the strong judicial policy in favor of settlements, particularly in the class action context." *West v. Continental Auto., Inc.*, 2018 WL 1146642, at *3 (W.D.N.C. Feb. 5, 2018) (internal citations and quotation marks omitted).[3] Accordingly, "at the preliminary approval stage,

---

[3]At final approval, the Court will evaluate the Settlement in light of certain factors identified by the Fourth Circuit: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; (4) the experience of counsel in the area; (5) the relative strength of the plaintiffs' case on the merits; (6) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation; (8) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (9) the degree of opposition to the settlement. *See West*, 2018 WL 1146642, at *4 (citing *Jiffy Lube*, 927 F.2d at 159). While the Court need not reach final determinations regarding these factors at this juncture, even a preliminary review of these factors reveals that the settlement warrants approval.

7

the Court need only find that the settlement is within 'the range of possible approval.'"

*Gaston*, 2021 WL 244807, at *5 (citation omitted) (collecting cases).

**ARGUMENT**

## I.    CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.  Even setting aside the less stringent inquiry relevant here, courts within the Fourth Circuit have recognized that classes of plan participants and beneficiaries are regularly certified. *See Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008) (citation omitted) (characterizing ERISA litigation as a "paradigmatic example of a [Rule 23](b)(1)] class.").  Moreover, this Court previously certified the Class and none of the circumstances supporting certification at that time have changed.

### A.    The Settlement Class Satisfies Rule 23(a)

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Amchem*, 521 U.S. at 613. Plaintiffs and the proposed Class satisfy each of the Rule 23(a) prerequisites.

#### 1.    Numerosity

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). Practicability of joinder depends on various factors, such as "the size of the class, ease of identifying its members and determining their addresses, facility of making service on

8

them if joined and their geographic dispersion." *Baltimore v. Laborers' Int'l Union of N. Am.*, 1995 WL 578084, at *1 (4th Cir. Oct. 2, 1995). While no specific number is needed to maintain a class action, courts in this Circuit have routinely found the numerosity requirement satisfied where a proposed class has dozens or hundreds of members—let alone thousands, as is the case here. *See Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984); *Tatum*, 254 F.R.D. at 64 (collecting cases). Indeed, courts in this Circuit have "certified classes composed of as few as eighteen . . . and twenty-five members." *Adams v. Sitel Operating Corp.*, 2019 WL 13296014, at *3 (M.D.N.C. Jan. 24, 2019) (quoting *Haywood v. Barnes*, 109 F.R.D. 568, 576 (E.D.N.C. 1986)). Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirement.

### 2. Commonality

The commonality prerequisite of Rule 23 requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Courts in this Circuit find the commonality prerequisite satisfied where "common questions are dispositive and overshadow other issues." *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) (citing *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)).

9

Actions involving alleged breaches of fiduciary duty under ERISA §§ 409 and 502(a)(2) involve legal and factual questions that are inherently common to all participants and beneficiaries of a plan. Plaintiffs here are "bringing suit on behalf of participants in the Plan [], the centralized administration of which is common to all class members." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019). "Because the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Id.*; *see* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a *plan*") (emphasis added).

The core questions in this Action are common to all Plan participants and include *inter alia*: (i) whether Defendants breached their alleged fiduciary duties by maintaining the Fidelity Freedom funds and other challenged investments in the Plan and/or causing the Plan to pay the investment management fees at issue; (ii) whether the Plan suffered resulting losses; (iii) the manner in which to calculate the Plan's losses; and (iv) what relief, if any, is appropriate in light of these alleged breaches. *See Clark v. Duke Univ.*, 2018 WL 1801946, at *5 (M.D.N.C. Apr. 13, 2018); *see also DiFelice*, 235 F.R.D. at 78 (finding commonality met because "the central question in this litigation is whether U.S. Airways breached its fiduciary duty to select and monitor investment options prudently."). While a single common question is sufficient to meet this standard, the common questions here are numerous. *See Wal-Mart,* 564 U.S. at 359. Since the critical issues in this litigation involve the acts and omissions of Defendants, "they are common to all Plan participants who might bring an action on behalf of the Plan." *DiFelice*, 235 F.R.D. at 78.

10

The evidence required to answer the central contentions in the Action is Plan-level and, consequently, common to all of the Plan's participants. If the evidence shows that Defendants breached their alleged fiduciary duties, "it would not only generate answers applicable to all class members, but would also address the heart of the claims at issue in this litigation." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 160 (S.D.N.Y. 2017). These answers do not depend on the particular circumstances of any individual participant because, in ERISA fiduciary breach actions, "liability is determined based on Defendants' not Plaintiff['s] decisions." *Moreno v. Deutsche Bank Am. Holding Corp.*, 2017 WL 3868803, at \*5 (S.D.N.Y. Sept. 5, 2017). The questions of law and fact in the Action are, by their nature, common to each member of the proposed Class, as the central allegations concern Defendants' administration of the Plan and Defendants' duties and conduct ran to the Plan. *See Sacerdote v. New York Univ.*, 2018 WL 840364, at \*3 (S.D.N.Y. Feb. 13, 2018). Since the central allegations here concern Defendants' administration of the Plan, common questions pervade the Action.

### 3. Typicality

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Clark*, 2018 WL 1801946, at \*5 (quoting *Tatum*, 254 F.R.D. at 65). Typicality is satisfied here for many of the same reasons as commonality. *See*

*Wal-Mart,* 564 U.S. at 349 n.5 (explaining that the commonality and typicality inquiries "tend to merge").

Plaintiffs bring this Action on behalf of the Plan, such that "[a]ny recovery of lost benefits will go the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." *Tatum*, 254 F.R.D. at 66. Courts routinely find a participant's fiduciary breach claim to be typical of the claims of all participants in a plan. *See Cunningham*, 2019 WL 275827, at *7 (typicality requirement met where plaintiffs "sufficiently alleged that the defendants' failure to manage the Plans affected all proposed members of the class."); *Sacerdote,* 2018 WL 840364, at *3 (noting that analysis of the typicality factor is similar to the commonality analysis and finding because "[e]ach named plaintiff is asserting a claim on behalf of the Plans . . . [t]he adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance."); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 573 (D. Minn. 2014) (finding typicality met for fiduciary breach claims because named plaintiffs and class members sought "redress of similar grievances under the same legal and remedial theories."). The circumstances in this Action, in which Plaintiffs allege fiduciary breaches arising out of Defendants' management and administration of the Plan, are no exception.

Defendants' alleged Plan-wide conduct at issue in the Action, employing an allegedly "disloyal and imprudent process for selecting, administering and monitoring the Plan's recordkeepers and investments," is of a kind routinely found to support determinations of typicality. *Clark*, 2018 WL 1801946 at *5. Likewise, the remedial

theory asserted by Plaintiffs here is identical among all members of the Class.  *See id.*  In sum, Plaintiffs' claims on behalf of the Plan are typical of all Class members' claims.

### 4.  Adequacy

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class."  Fed. R. Civ. P. 23(a)(4).  This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent" and "evaluate competency and conflicts of class counsel."  *Clark*, 2018 WL 1801946, at *7 (quoting *Amchem*, 521 U.S. at 625 n.20).

Plaintiffs' interests are tightly aligned with all other members of the Settlement Class by virtue of the very nature of the claims that Plaintiffs bring.  Plaintiffs, acting in a representative capacity, seek to enforce the duties that Defendants owed to the Plan and to recover damages and equitable relief due.  *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Mass Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n.9 (1985).  Since Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the interests of the Class.  Indeed, Plaintiffs and Class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability.  *See Moreno*, 2017 WL 3868803, at *7; *see also West*, 2018 WL 1146642 at *5 ("[T]here is no evidence of a direct conflict of interests between named Plaintiffs and the class they seek to represent.").

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that Plaintiffs easily surpass.  *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966).  Plaintiffs have demonstrated

their commitment to pursuing this Action on behalf of the Settlement Class and have achieved a very favorable result, which does not favor any member of the Settlement Class at the expense of others. *See* Berin Decl., at ¶ 3. Indeed, Plaintiffs have actively participated in the litigation from the outset and assisted Class Counsel in drafting the pleadings and other papers filed in the Class Action, consulted with Class Counsel as needed, answered discovery requests, prepared for and sat for depositions, provided additional information, participated in strategy and settlement discussions with Class Counsel, and otherwise assisted in representing the interests of the Plan and the Class in the Action. *See id.* Plaintiffs also participated in regular conference calls with Class Counsel to ensure they remained fully apprised of all developments in the Action. *See id.* Plaintiffs fully understand the nature of their claims, as well as their duties and responsibilities as Class Representatives and to the Plan, and they have no interest antagonistic to the Plan and members of the Settlement Class. Plaintiffs clearly have and will continue to adequately represent all members of the Settlement Class. In addition, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail below.

**B.    The Settlement Class Satisfies Rule 23(b)(1)**

In addition to Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613–14. Courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary breach cases. This is because "[s]eparate actions over whether the defendants' investment procedures and management methods violated their fiduciary duties could result in decisions that place incompatible requirements on the

14

defendants in terms of either the losses that defendants would have to pay back to the Plan," and "individual adjudications would be dispositive of the interests of the other participants not parties to the individual adjudications, because the claims concern the same actions in managing the Plan and because damages are owed to the Plan as a whole and not individual plaintiffs." *Clark*, 2018 WL 1801946, at *9. This finds root in trust law, as a suit alleging a breach of trust by a trustee or other fiduciary affecting the members of a large class of beneficiaries requiring an accounting or similar procedure to restore the subject of the trust is a classic example of the Rule 23(b)(1)(B) action. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Plaintiffs' claims on behalf of the Plan are no exception.

### C. Miller Shah and Capozzi Adler Should be Appointed as Class Counsel

In appointing Class Counsel, this Court should consider the Rule 23(g)(1)(A) factors:

> (i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Proposed Class Counsel, Miller Shah LLP ("Miller Shah") and Capozzi Adler, P.C. ("Capozzi") are exceedingly qualified under these factors. *See* Berin Decl., ¶¶ 5, 7. Class Counsel have substantial experience litigating ERISA class actions and have leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members. *See id.* These efforts include comprehensively investigating the claims forming the basis of the Action,

filing detailed pleadings, briefing several dispositive and procedural motions (including substantial briefing on Defendants' summary judgment motion), engaging in significant fact and expert discovery, and participating in a private mediation, settlement conference with the Court, and thorough additional settlement negotiations. *Id.* ¶¶ 5, 7, 9. Class Counsel will continue to leverage their deep experience and resources on behalf of the Settlement Class. The Court should appoint Miller Shah and Capozzi as Class Counsel.

## II. THE SETTLEMENT, NOTICE PLAN, AND PLAN OF ALLOCATION WARRANT PRELIMINARY APPROVAL

The first step in approving any proposed settlement in a class action is preliminary approval. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). At this stage, the Court reviews the proposed settlement to determine whether it is sufficient to warrant public notice and a hearing. *See Id.* As this Court has recognized, the analysis begins with "the unassailable premise that settlements are to be encouraged." *West*, 2018 WL 1146642, at *4 (quoting *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989)*, cert. denied*, 493 U.S. 1058 (1990)).

### A. The Settlement Should be Preliminarily Approved

There is a strong initial presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *See Gaston*, 2021 WL 244807, at *6; *Horton*, 855 F. Supp. at 830. As described above, the Settlement is the product of a lengthy arm's-length process under the auspices of an experienced neutral mediator and experienced counsel. Further, Class Counsel and Defendants' counsel are experienced in ERISA litigation and each had a thorough understanding of the factual

and legal issues through the significant fact and expert discovery and summary judgment briefing exchanged, which the Fourth Circuit has recognized as a factor weighing in favor of settlement approval.  *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *see also Gaston*, 2021 WL 244807, at *6 ("the opinion of experienced and informed counsel in favor of settlement should be afforded due consideration in determining whether a class settlement is fair and adequate.").

Class Counsel conducted substantial investigation before the initiation of the Action and, in discovery, reviewed and analyzed tens of thousands of pages of documents and conducted depositions of numerous fact witnesses.  *See* Berin Decl. ¶¶ 6–8.  In addition, Class Counsel engaged experts to conduct analyses relevant to issues of liability and damages based on the record and their significant experience in the retirement plan industry.  *See id.*  Defendants disclosed their own expert witnesses and Plaintiffs deposed each of the experts anticipated to testify on behalf of Defendants.  *See id.*  Thus, Class Counsel has extensively developed Plaintiffs' claims on behalf of the Plan and Settlement Class.  *See Horton*, 855 F. Supp. at 829-30; *see also Jiffy Lube*, 927 F.2d at 157–58.  The Parties were engaged in vigorous litigation when they agreed to the Settlement.  The quickly approaching trial promised to be lengthy and complex, involving numerous fact witnesses, substantial volumes of documentary evidence, and competing experts on issues of liability going to Plaintiffs' claims and Defendants' defenses, as well as the Plan's alleged losses.  Thus, Plaintiffs faced meaningful challenges to their ability to obtain a recovery on behalf of the Plan, even setting aside the additional complexity and delay of likely appeals, which strongly supports preliminary approval of the Settlement.

*See Horton*, 855 F. Supp. at 831 ("Perhaps the most important factor in evaluating the adequacy of a class action settlement is the relative strengths of plaintiffs' case and the existence of any defenses or difficulties of proof.").

Class Counsel has significant experience in class action litigation generally and ERISA breach of fiduciary duty litigation in particular and are of the opinion that the Settlement is fair and reasonable. *See id.* ("the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement."). The Settlement provides a substantial monetary recovery of $3,500,000.00, as well as certain additional relief related to the administration of the Settlement. Further, the Parties will submit the Settlement to an independent fiduciary, which will provide an opinion on the Settlement's fairness before the Fairness Hearing.

In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, and provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate and merits preliminary approval.

### B.    The Notice Plan Should be Preliminarily Approved

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying Settlement Class members. *See* Fed. R. Civ. P. 23(c)(2). Due process and Rule 23(e) do not require that each Class Member receive notice but require that the class notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust*

18

*Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974).

The Notice Plan is designed to reach the largest number of Settlement Class members possible. Indeed, the Settlement Notice will be sent by email and/or first-class mail to the last known address of each Settlement Class member prior to the Fairness Hearing. Notably, all Settlement Class members had Plan accounts, so the Plan's recordkeeper has their addresses and other identifying information. Additionally, the Notice, Settlement Agreement, and other litigation documents will be posted on a website established by the Settlement Administrator, and the Settlement Administrator will establish and monitor a toll-free number to field inquiries by Settlement Class members. The Notice will also provide Class Counsels' contact information.

The Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e). It clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees, litigation expenses, and case contribution awards that may be sought; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing. *See* Settlement Agreement, Ex. A (Settlement Notice).

### C. The Plan of Allocation Should be Preliminarily Approved

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for the Class Representatives or any

segment of the Settlement Class. This is substantially similar to plans approved by courts in analogous ERISA litigation. *See, e.g.*, *Garthwait v. Eversource*, No. 3:20-cv-00902-JCH, Dkt. 205 (D. Conn. Sept. 27, 2023) (approving substantially similar plan of allocation); *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, Dkt. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end account balance during the Class Period and dividing that amount by the total sum of year-end asset amounts in the Plan during the Class Period . . . ."). Considering the equitable treatment of Class Members and means of administering the Settlement, the Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

## CONCLUSION

Plaintiffs respectfully submit that this Court should preliminarily approve the Settlement, Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for a Fairness Hearing.

DATED: May 15, 2024                     Respectfully submitted,

                                        */s/ Alec J. Berin*
                                        James C. Shah
                                        Alec J. Berin
                                        MILLER SHAH LLP
                                        1845 Walnut Street, Suite 806
                                        Philadelphia, PA 19103
                                        Telephone: (866) 540-5505
                                        Facsimile: (866) 300-7367
                                        Email: jcshah@millershah.com
                                              ajberin@millershah.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
         lrubinow@millershah.com

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

*Attorneys for Plaintiffs, the Plan
and the Settlement Class*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I certify that this Memorandum complies with the page and type requirements under Local Rule 7.3 because it is less than 6,250 words and typed in size 13-point Times New Roman font, a proportional font size.

/s/ Alec J. Berin
Alec J. Berin

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2024, I electronically filed the foregoing

Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of

Class Action Settlement with the Clerk of Court, and upon the counsel of record using the

CM/ECF system.

*/s/ Alec J. Berin*
Alec J. Berin
