**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DARYA DEARING, JANICE GULLICK,
NELSON SIEVERS, and LAUREN
BROWN, individually and on behalf of all
others similarly situated,

        Plaintiffs,

        v.

IQVIA INC.; THE BOARD OF
DIRECTORS OF IQVIA HOLDINGS,
INC.; and THE BENEFITS INVESTMENT
COMMITTEE,

        Defendants.

Case No: 1:20-cv-00574-WO-JEP

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINITFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION
FOR ATTORNEYS' FEES, EXPENSES, AND CASE CONTRIBUTION AWARDS**

---

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     BACKGROUND ..................................................................................... 3

    A. The Settlement ................................................................................... 3

    B. Class Notice ...................................................................................... 3

    C. Distribution of the Settlement Fund and Reaction of the Settlement Class ........ 5

    D. Efforts of Plaintiffs and Class Counsel ............................................... 6

    E. Independent Fiduciary Review ........................................................... 7

III.    ARGUMENT......................................................................................... 8

    A. The Proposed Settlement is Fair, Reasonable and Adequate, and Warrants Final Approval ............................................................................... 8

        1. Certification of the Settlement Class is Appropriate ...................................... 8

        2. The Settlement is Fair, Reasonable, and Adequate ........................................ 8

        3. The Notice Procedures and *Pro Rata* Plan of Allocation ............................. 13

    B. The Requested Attorneys' Fees, Litigation Expenses and Case Contribution Awards Should be Approved. ............................................................ 13

        1. The Requested Fee and Expense Awards were Negotiated at Arm's Length and Should Be Given Deference by the Court ..................................... 14

        2. The Requested Fee Award is Fair and Reasonable....................................... 15

        3. The Requested Fees are Justified Under the *Singleton* Factors.................... 16

        4. The Requested Award is Supported by a Lodestar Cross-Check................. 20

    C. Class Counsel Should be Awarded Their Reasonable Expenses ..................... 21

    D. Plaintiffs' Requested Case Contribution Awards Should be Granted Considering Their Efforts for the Plan and Settlement Class ................................. 22

IV.     CONCLUSION ...................................................................................23

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*,
28 F.4th 513 (4th Cir. 2022) ......................................................................10, 11

*Allen v. Novant Health*,
2023 WL 7287506 (M.D.N.C. Nov. 6, 2023)..........................................13

*Almendarez v. J.T.T, Enters. Corp.*,
2010 WL 3385362 (D. Md. Aug. 25, 2010) ............................................22

*Bank of America, N.A.*,
790 F. Supp. 2d 466 (W.D. Va. Jun. 14, 2011) ......................................9

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
2012 WL 2064907 (S.D.N.Y. June 7, 2012)...........................................23

*Berry* v. *Schulman*,
807 F.3d 600 (4th Cir. 2015) .....................................................................9

*Berry v. Wells Fargo & Co.*,
2020 WL 9311859 (D.S.C. July 29, 2020) .............................................13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..................................................................................14

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. Jan. 31, 2014) .............................................19, 20

*Clark v. Duke Univ.*,
2019 WL 2588029 (M.D.N.C. June 24, 2019)......................................9, 13

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) ....................................................15

*Compton v. North Central Virginia Restaurants, Inc.*,
2022 WL 4008719 (W.D. Va. Sept. 2, 2022)..........................................11

*Decohen v. Abbasi, LLC*,
299 F.R.D. 469 (D. Md. 2014) .................................................................15

iii

*Deloach v. Philip Morris Co.*,
   2003 WL 23094907 (M.D.N.C. Dec. 19, 2003) ............................................. 21

*Donaldson v. Primary Residential Mortg., In*c.,
   2021 WL 2187013 (D. Md. May 28, 2021) .................................................... 15

*Feinberg v. T. Rowe Price Group Inc.*,
   610 F. Supp. 3d 758 (D. Md. Jul. 6, 2022) ........................................ 15, 17, 23

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) ....................................................................... 11

*Goldberg v. Marriott PLP Corp.*,
   33 F. Supp. 434 ............................................................................................ 21

*Graham v. Famous Dave's of Am., Inc.*,
   2022 WL 17584274 (D. Md. Dec. 12, 2022) ................................................. 17

*Hall v. AT&T Mobility LLC*,
   2010 WL 4053547 (D.N.J. Oct. 13, 2010) .................................................... 16

*Hall v. Capital One Fin. Corp.*,
   2023 WL 2333304. (E.D. Va. Mar. 1, 2023) ................................................. 18

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...................................................................................... 15

*In re Abrams & Abrams, P.A.*,
   605 F.3d 238 (4th Cir. 2010) ........................................................................ 17

*In re Jiffy Lube Secs. Litig.*,
   927 F.2d 155 (4th Cir. 1991) .................................................................... 9, 10

*In re LinkedIn ERISA Litigation*,
   2023 WL 8631678 (N.D. Cal. Dec. 13, 2023) .............................................. 12

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................. 19

*In re MedStar ERISA Litigation*,
   2024 WL 4110941 (D. Md. Sept. 5, 2024) ............................................ *passim*

iv

*In re Mid-Atlantic Toyota Antitrust Litig.*,
  605 F. Supp. 440 (D. Md. 1984) ................................................................... 22

*In re Mutual Funds Litig.*,
  2010 WL 2307568 (D. Md. May 19, 2010) .................................................. 13

*In re Vitamins Antitrust Litig.*,
  2000 WL 1737867 (D.D.C. Mar. 31, 2000) ................................................. 12

*In re Wachovia Corp. ERISA Litig*.,
  2011 WL 5037183 (W.D.N.C. Oct. 24, 2011) ........................................ 18, 19

*In re: Lumber Liquidators Chines Manufactured Flooring Prod. Mktg. Sales Practices &
  Prod. Liab. Litig*.,
  952 F.3d 471 (4th Cir. 2020) ........................................................ 8, 9, 10, 11

*Jones v. Coca-Cola Consolidated, Inc.*,
  2022 WL 703605 (W.D.N.C. Mar. 7, 2022) ................................................. 12

*Jones v. Dominion Resources Services, Inc.*,
  601 F. Supp. 2d 756 (S.D.W. Va. Mar. 6, 2009) ......................................... 19

*Kelly v. John Hopkins University*,
  2020 WL 434473 (D. Md. Jan. 28, 2020)............................................*passim*

*Krakauer v. Dish Network LLC*,
  2018 WL 6305785 (M.D.N.C. Dec. 3, 2018)...................................... 15, 21, 22

*Kruger v. Novant Health, Inc*.,
  2016 WL 6769066 (M.D.N.C. Sep. 29, 2016) ........................... 16, 19, 20, 21

*Malchman v. Davis*,
  761 F.2d 893 (2d Cir. 1985).......................................................................... 15

*In re MicroStrategy, Inc. Secs. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001)............................................................ 11

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. Jan. 5, 2024) ...................................................... 12

*Officers for Justice v. Civ. Serv. Com'n of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................ 15

v

*Phillips v. Triad Guar. Inc.*,
  2016 WL 2636289 (M.D.N.C. May 9, 2016) ................................................................. 15

*Sacerdote v. New York Univ.*,
  328 F. Supp. 3d 273 (S.D.N.Y. 2018) .................................................................. 11, 12

*Sharp Farms v. Speaks*,
  917 F.3d 276 (4th Cir. 2019) .................................................................. 10, 11

*Singleton v. Domino's Pizza LLC*,
  976 F. Supp. 2d (D. Md. 2013) .................................................................. *passim*

*Skochin v. Genworth Financial*,
  2020 WL 6708388 (E.D. Va. Nov. 13, 2020) ................................................................. 20

*Smith v. CommonSpirit Health*,
  37 F.4th 1160  (6th Cir. 2022) .................................................................. 18

*Spann v. AOL Time Warner Inc.*,
  2005 WL 1330937 (S.D.N.Y. Jun. 7, 2005) ................................................................. 19

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................. 23

*Tussey v. ABB, Inc.*,
  2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) ................................................................. 17

## Statutes

29 U.S.C. § 1001 .................................................................. 1

## Rules

FED. R. CIV. P. 23 .................................................................. 8, 12, 13, 21

## Regulations

68 Fed. Reg. 75,632 .................................................................. 7, 8

**Other Authorities**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
 Procedure §1803, at 325 (3d ed. 2005) .........................................................................14

Plaintiffs, Darya Dearing, Janice Gullick, Nelson Sievers and Lauren Brown (collectively, "Plaintiffs"), on behalf of the proposed Settlement Class and the IQVIA 401(k) Plan (the "Plan"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Expenses, and Case Contribution Awards (the "Motion"), pursuant to the Court's Preliminary Approval Order entered on May 24, 2024 (ECF No. 169, "Preliminary Approval Order") (amended only to add calendar date for the final fairness hearing).

## I.    INTRODUCTION

The Motion seeks final approval of a proposed Settlement in this ERISA[1] class action after more than four years of thorough and active litigation, including numerous dispositive and procedural motions, full discovery, pre-trial motions and preparation for the trial scheduled to begin in September 2024.  The Settlement provides for payment of $3,500,000.00 to the Settlement Class, which is a very favorable result considering the serious uncertainties and risks facing Plaintiffs in connection with the pending summary judgment motion and when it comes to establishing liability and damages at trial.  In view of this beneficial result, Plaintiffs submit the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and request that the Court grant the Motion.  Moreover, the significant efforts of Plaintiffs and Class Counsel in achieving this significant recovery for the Settlement Class warrant the requested awards

---

[1]ERISA refers to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

of attorneys' fees, litigation expenses, and case contribution awards to Plaintiffs, each of which are reasonable, within "market" rates and consistent with awards regularly approved by courts in this District.

In the Preliminary Approval Order, the Court *inter alia* certified the Settlement Class, approved the form and manner of the Settlement Notice, and scheduled a final approval hearing for December 2, 2024. *See* ECF No. 169. Since then, the Settlement Notice has been emailed to over 56,000 members of the Settlement Class with diligent follow-up to ensure the best notice practicable has been provided. The Settlement Notice described in detail the Settlement, its terms, the nature of the litigation, the Plan of Allocation, the anticipated requests for attorneys' fees, expenses, and contribution awards, and method for filing any objections. To date, no objections have been filed on the docket or received by Class Counsel or the Settlement Administrator to the Settlement or to the anticipated requests for fees, expenses, and contribution awards.

In addition, pursuant to the Settlement, the Independent Fiduciary retained on behalf of the Plan to evaluate the Settlement has reviewed the Settlement and related applications and determined the Settlement is reasonable, such that the release of the Plan's claims pursuant to the Settlement would be consistent with relevant Department of Labor guidance. The Independent Fiduciary also considered the related applications for attorneys' fees, expenses and case contribution awards when reaching this determination. The Independent Fiduciary's determination will be filed on this date.

For the foregoing reasons, the Court should grant the Motion in its entirety, as none of the circumstances warranting preliminary approval have changed, sufficient

notice has been provided to the Settlement Class, and the Settlement Class's reaction to the Settlement and related applications has been overwhelmingly positive.

## II. BACKGROUND

In this action, Plaintiffs alleged Defendants breached the fiduciary duty they owed to the Plan and its participants under ERISA by selecting and retaining imprudent investments in the Plan.  *See* ECF No. 17 (Amend. Compl.), ¶¶ 6, 29–59.   The Parties have since thoroughly litigated the action through discovery and multiple substantive and procedural pre-trial motions.  The trial was scheduled to begin on September 9, 2024.

### A. The Settlement

The Settlement provides that Defendants will make payment of $3,500,000.00 into a Qualified Settlement Fund to be allocated to participants, former participants, and alternate payees of the Plan.  *See* ECF No. 163-3 (Settlement Agreement) § 5.3.  In exchange for this payment, Plaintiffs' claims against Defendants will be released.  *See id.*, at § 7.1.  The Settlement also set forth a proposed Notice Plan, and provides for a request of attorneys' fees, expenses, and for Plaintiffs' contribution awards.  *See id.*, at §§ 2.4, 6.1, Exhibit A (Form Settlement Notice).   In addition, the Settlement requires that Defendants retain an Independent Fiduciary to assess the Settlement on behalf of the Plan.  *See id.*, at § 2.1.

The Settlement was the result of extensive, arm's-length negotiations between experienced counsel for the Parties who had concluded discovery and litigated the case through dispositive and pre-trial motions.  *See* Declaration of Alec J. Berin ("Berin Decl."),  at ¶ 2.  When the Settlement was reached, the Parties were in a position where

3

they could clearly assess the strengths and weaknesses of the claims and defenses. *Id.*
The Parties' settlement discussions were facilitated by a well-known and highly respected
mediator. *Id.* Although the Parties did not settle at mediation, the Parties' counsel
continued negotiations which intensified as the litigation neared its trial date. *See id.*
Plaintiffs actively participated in the settlement negotiations with Class Counsel. *See id.*,
¶ 24.

The Settlement, if approved, will provide an immediate and substantial benefit to
the Settlement Class, while eliminating all risk of a lower or zero recovery at trial. In
view of the difficulty and uncertainty of meeting the high burdens of proving liability and
damages at trial, Plaintiffs submit that the Settlement represents an exceptional result for
the Plan and Settlement Class under the circumstances. *See* Berin Decl., at ¶ 5, n. 2. For
these reasons, Plaintiffs believe the proposed Settlement is fair, adequate, reasonable, and
in the best interests of the Settlement Class, such that final approval is warranted. *See*
Berin Decl., at ¶¶ 5-6.

### B. Class Notice

Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"),
the settlement administrator, disseminated by electronic and/or first-class mail the
Settlement Notice to approximately 56,000 members of the Settlement Class, and the
Former Participant Claim Form to those without an active account in the Plan. *See*
Declaration of Cornelia Vieira ("Vieira Decl."), at ¶¶ 4-9. Prior to doing so, SCS verified
active email addresses and ran mailing addresses through the United States Postal Service
national change of address service to obtain new address information. *See id.*, at ¶ 5.

4

For any returned emails or mail returned as undeliverable, SCS performed "skip-tracing" to obtain new addresses and re-sent Notices and Former Participant Claim Forms. *See id.* at ¶¶ 4-9. SCS also established a website for the Settlement Class, which provides information about the case and relevant deadlines and makes available pertinent documents, including: (i) Notice; (ii) Former Participant Claim Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement and exhibits; and (v) the Complaint. *See id.*, at ¶ 11. SCS also established a toll-free telephone number and email address to which members of the Settlement Class could direct questions. *See id.*, at ¶ 10. On August 16, 2024, SCS sent reminder postcards by first-class mail and email to each former participant, beneficiary, and alternate payee who do not return the Former Participant Claim Form prior to the deadline. *See id.*, at ¶¶ 12. These notice procedures followed by SCS were consistent with procedures followed by SCS in numerous other class actions over the past seven years. *See id.*, at ¶ 13.

## C. Distribution of the Settlement Fund and Reaction of the Settlement Class

Approximately 32,177members of the Settlement Class will automatically receive allocations of Settlement proceeds. *See* Vieira Decl., at ¶ 15. SCS has received 4,216 Former Participant Claim Forms to date. *See id.* The deadline for submitting the Former Participant Claim Form was September 23, 2024. *See id.* After payments to Class members, any amount remaining in the Settlement Fund from uncashed checks after 180 days will be distributed to the Plan to be utilized for the benefit of participants and beneficiaries. In other words, there is no reversion to Defendants.

5

To date, no objections to the Settlement or any of the related applications have been filed or served by members of the Settlement Class who were notified by SCS. *See* Berin Decl., at ¶ 10; *see also* Vieira Decl., at ¶ 14. The Independent Fiduciary will also objectively review the Settlement on behalf of the Plan and Settlement Class.

### D. Efforts of Plaintiffs and Class Counsel

For the past four years, Plaintiffs and Class Counsel have vigorously pursued relief for the Plan and the Settlement Class, and devoted the time and resources to litigate this action at the highest quality level. *See* Berin Decl. at ¶¶ 18, 20. The Parties engaged in significant discovery efforts in this action, including *inter alia* the exchange tens of thousands of pages of documents relating to Plan's investment monitoring processes. *See id.*, at ¶ 20. The Parties deposed numerous fact witnesses, including a corporate representative of IQVIA and members of the Plan's fiduciary committee. *See id.* The Parties also deposed expert witnesses and litigated the admissibility of expert reports for trial. *See id.* As a result, when negotiating the Settlement, Plaintiffs were well-positioned to understand and evaluate the prospects and risks of proceeding to trial. *See id.*

Class Counsel and their professionals have spent, in the aggregate, over 2,670 hours prosecuting this case against Defendants, resulting in a lodestar of $1,504,761.50 with additional anticipated lodestar necessary to complete the representation in this matter. *See id.*, at ¶¶ 15-16. Class Counsel undertook to represent Plaintiffs and the Class on a contingent basis and advanced necessary litigation expenses without any guarantee of recovery. *See id.*, at ¶¶ 17-18.

6

Plaintiffs have each had significant involvement in this litigation from the pre-filing investigation of the claims through trial preparation. *See id.*, at ¶ 21. Plaintiffs participated in all phases of the litigation and their efforts included reviewing case filings, collecting documents for production, responding to interrogatories, regularly conferring with Class Counsel about the progress and litigation strategy, and engaging in pre-trial preparations. *See id.* Plaintiffs also participated in the settlement negotiations and believe the Settlement represents a strong outcome on behalf of the Plan. *See id.*

### E. Independent Fiduciary Review

The Independent Fiduciary's determination provides another touchstone to assess the Settlement and related applications. *See* Berin Decl., at ¶ 4. The Parties have cooperated to provide the Independent Fiduciary with sufficient information to evaluate the Settlement. *See id.* Specifically, counsel for the Parties participated in separate interviews with the Independent Fiduciary and provided documents and information reflecting this history of the litigation and the Parties' assessment of the relative strengths and weaknesses of the Plan's claims and associated losses. *See id.* Further, the Independent Fiduciary has complied with all relevant conditions in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003 by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination. The Independent Fiduciary's provides an opinion on the reasonableness of the Settlement, including Plaintiffs' requests for attorneys' fees, expenses, and case contribution awards, that should serve as additional support for a finding that the

7

Settlement is fair, reasonable, and adequate.  *See id.*

## III.    ARGUMENT

### A.  The Proposed Settlement is Fair, Reasonable and Adequate, and Warrants Final Approval

#### 1.  Certification of the Settlement Class is Appropriate

The Court previously certified the Settlement Class, finding that Rules 23(a) and 23(b)(1) are satisfied.  *See* ECF No. 169, at ¶ 1.  The Settlement Class is materially identical to the Class previously certified by the Court (ECF No. 55), which also found the prerequisites of Rules 23(a) and 23(b)(1) to be satisfied.  None of the circumstances that warranted certification have changed and, thus, the Settlement Class should be maintained through entry of a final judgment.

#### 2.  The Settlement is Fair, Reasonable and Adequate

Rule 23(e) provides that the claims of a certified class may be settled "only with the court's approval."  FED. R. CIV. P. 23(e).  To approve a proposed settlement, the Court must conclude that the settlement is "fair, reasonable and adequate," and that the four specific factors enumerated in Rule 23(e)(2) are met—*i.e.*, (1) adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members.  The Fourth Circuit applies essentially the same factors.  *See In re: Lumber Liquidators Chines Manufactured Flooring Prod. Mktg. Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 484 n. 8 (4th Cir. 2020).

##### i.    Fairness

The fairness of settlements is evaluated under the following factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that

8

had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." *Lumber Liquidators,* 952 F.3d at 484 (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry* v. *Schulman,* 807 F.3d 600,614 (4th Cir. 2015) (citing *Jiffy Lube*, 927 F.2d at 159).

The Settlement was the result of honest, arm's-length bargaining by experienced counsel, with involvement by a highly respected mediator, so there was no collusion of any kind. *See* Berin Decl., at ¶ 2. The Settlement was achieved only after comprehensive fact and expert discovery was completed, summary judgment and pre-trial motions were resolved and the parties were preparing for trial. *See id.* Having conducted extensive document, witness and expert discovery, Plaintiffs were positioned to clearly assess the prospects of their claims and defenses at trial. *See* Berin Decl. ¶¶ 2, 20. Settlements of mature cases fully developed for trial foreclose the possibility of collusion. *See In re MedStar ERISA Litigation,* 2024 WL 4110941, at *4 (D. Md. Sept. 5, 2024); *see also Domonske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. Jun. 14, 2011) (holding settlement of a mature case points away from collusion); *see Clark v. Duke Univ.*, 2019 WL 2588029, at *5 (M.D.N.C. June 24, 2019) (similar).

### ii.  Adequacy

The adequacy of settlements is evaluated by these factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the

9

anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Lumber Liquidators,* 952 F.3d at 484 (citing *Jiffy Lube,* 927 F.2d at 159); *see also 1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 526 (4th Cir. 2022) (applying same factors).   "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019).

While Plaintiffs felt strongly about their case, they know that proving liability and damages at trial is uncertain and risky.  *See* Berin Decl., at ¶ 5.  For example, the Court entered partial summary judgment as to Plaintiffs' claims associated with certain challenged investments since Plaintiffs' experts conceded those investments did not result in losses to the Plan.  *See* ECF No. 132.  Moreover, the pending summary judgment motion involved contested issues concerning loss causation analogous to those that have resulted in summary judgment for Defendants in other cases.  Although Plaintiffs are confident that they raised sufficient issues of fact to defeat summary judgment, they would face a more difficult burden at trial.  At trial, they risked betting on the Court's embrace of their experts' testimony over Defendants' experts.  *See id.*; *MedStar*, 2024 WL 4110941, at *5 (acknowledging that reliance on experts to meet the burden of proof at trial is extremely risky).

The Settlement provides the Settlement Class with a high percentage of the alleged damages identified by Plaintiffs' experts in the event they prevailed at trial,

10

eliminating all risk of a reduced or zero dollar value judgment. *See* Berin Decl., at ¶ 5.

The Settlement "assures that the Plaintiffs receive an immediate, tangible benefit instead

of a future uncertain award." *Compton v. North Central Virginia Restaurants, Inc.*, 2022

WL 4008719, at *3 (W.D. Va. Sept. 2, 2022); *see also MicroStrategy, Inc.*, 148 F. Supp.

2d 654, 667 (E.D. Va. 2001) (finding "a bird in hand is worth two in the bush"); *cf.*

*Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018) (judgment entered in

favor of defendants following trial of ERISA fiduciary breach action).

     In view of the difficulties and risks of trial, as well as the potential years of delay

from any appeals taken, Plaintiffs believe that Settlement is a very favorable outcome.

*See* Berin Decl., at ¶¶ 5-6. The Court should also place considerable weight on the

opinion of experienced and informed counsel supporting the settlement. *See Flinn v.*

*FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *MicroStrategy, Inc.*, 148 F. Supp. 2d at

665.

### iii. Reasonableness

     Although no enumerated factors have been articulated, "assessing the

reasonableness of a settlement involves examining its amount." *1988 Trust*, 28 F.4th at

527 (citing *Sharp Farms,* 917 F.3d at 303-04); *see Lumber Liquidators*, 952 F.3d at 484.

This requirement is intended to "ensure[] that the amount on offer is commensurate with

the scale of the litigation and the plaintiffs' chances of success at trial." *MedStar*, 2024

WL 4110941, at *5 (citing *Sharp Farms,* 917 F.3d at 303-04). "[I]t is well-settled law

that a proposed settlement may be acceptable even though it amounts to only a fraction of

the potential recovery that might be available to the class members at trial." *In re*

*LinkedIn ERISA Litigation*, 2023 WL 8631678, *7 (N.D. Cal. Dec. 13, 2023) (citing to

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 527

(C.D. Cal. Jan. 5, 2024).

The Settlement recovery is reasonable in relation to the damages potentially

recoverable at trial and in relation to settlements in other ERISA cases. *See* Berin Decl.,

at ¶ 5; *Jones v. Coca-Cola Consolidated, Inc.*, 2022 WL 703605 (W.D.N.C. Mar. 7,

2022) (approving settlement of $3.5 million in ERISA case involving Freedom Fidelity

Funds); *see also In re LinkedIn ERISA Litigation*, 2023 WL 8631678, at *7 (approval of

settlement in ERISA case involving Freedom Fidelity Funds at similar percentage in

relation to alleged losses); *cf. Sacerdote*, 328 F. Supp. 3d at 273 (defense verdict). "The

test is whether the settlement is adequate and reasonable and not whether a better

settlement is conceivable." *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *2

(D.D.C. Mar. 31, 2000). The Settlement is thus reasonable in relation to the realistically

recoverable damages.

### iv.     Other Rule 23(e)(2) Factors

The other Rule 23(e)(2) factors are also satisfied by the Settlement. Class Counsel

are highly skilled and experienced ERISA attorneys who have provided the highest

caliber of representation. *See* Berin Decl., at ¶¶ 5, 18-20. This is reflected by Class

Counsel's efforts to prosecute this litigation to the relative eve of trial, the significant

time and resources devoted, and the very substantial settlement offer was achieved. *See*

*id.*, at ¶¶ 18-20. The Settlement also treats all active and former participants equally as

each receives a *pro rata* allocation of the settlement proceeds. *See* ECF No. 166-3, Ex. B

12

(Plan of Allocation).

### 3. The Notice Procedures and *Pro Rata Plan* of Allocation

The Settlement's Notice Procedure and Plan Allocation approved in the Preliminary Approval Order are fair and reasonable. *See* FED. R. CIV. P. 23(e)(1). SCS provided the approved Notice to members of the Settlement Class, took efforts to verify and update email and postal addresses, and diligently followed up when mail was unreturned. *See id.*, at ¶¶ 4-12. SCS also established a website concerning the Settlement for active and former Plan participants. *See id.*, at ¶ 11. This kind of notice has been found sufficient and the best practicable under the circumstances. *See id.*, at ¶ 14; *see also Allen v. Novant Health*, 2023 WL 7287506, at *2 (M.D.N.C. Nov. 6, 2023) (approving similar notice plan); *In re Mutual Funds Litig.*, 2010 WL 2307568 (D. Md. May 19, 2010) (same).

The Plan of Allocation provides for *pro rata* distribution to Settlement Class members who had invested in the alleged imprudent investments based on their weighted Plan account balances. *See* ECF No. 166-3, Ex. B. This exact type of even-handed, *pro rata* allocation has repeatedly been found to be "fair, adequate and reasonable," under Rule 23(e). *MedStar*, 2024 WL 4110941, at *5 (approving the same *pro rata* allocation plan); s*ee Clark*, 2019 WL 2588029 at *11 (same); *see also Berry v. Wells Fargo & Co.*, 2020 WL 9311859, at *11 (D.S.C. July 29, 2020). The Court should find that the notice procedures and Plan of Allocation are fair and reasonable.

### B. The Requested Attorneys' Fees, Litigation Expenses and Case Contribution Awards Should be Approved

Plaintiffs request an award of attorneys' fees of one-third of the Gross Settlement

13

Amount, consistent with the Settlement and the Notice disseminated to the Settlement Class. Plaintiffs also seek reimbursement of $241,967.91 in reasonable and necessary expenses advanced on behalf of the Class, and a case contribution award for Plaintiffs of $12,500 each. These requests are justified considering the extraordinary efforts and resources dedicated by Plaintiffs and Class Counsel, the favorable result, and the fact that no objections have been filed. The Independent Fiduciary separately reviewed each of these applications and found them to be reasonable.

Rule 23 provides that courts may "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Attorneys who secure a recovery for a class are generally "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1803, at 325 (3d ed. 2005).

### 1. The Requested Fee and Expense Awards were Negotiated at Arm's Length and Should Be Given Deference by the Court

When reviewing Plaintiffs' requests, the Court should afford deference to the fact that the applications were negotiated at arm's length and fully disclosed in the Settlement Notice. As the Supreme Court has stated, "[a] request for attorney's fees should not result in a second major litigation." *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983);

14

*see also Officers for Justice v. Civ. Serv. Com'n of City and County of San Francisco*,
688 F.2d 615, 625 (9th Cir. 1982). Where the fee negotiations were conducted at arm's-
length, with no evidence of collusion, courts accord "substantial deference" to the parties'
agreement. *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005); *see also
Malchman v. Davis*, 761 F.2d 893, 905 n. 5 (2d Cir. 1985) (holding that an agreement
'not to oppose' a fee application is consent). The requested attorneys' fees are consistent
with the fees routinely awarded in similar ERISA class actions and there have been no
objections to the application, supporting a finding that the requested fees are reasonable.

### 2. The Requested Fee Award is Fair and Reasonable

Plaintiffs' one-third fee request is based on the percentage-of-recovery method
which is not only appropriate, but the preferred method. "Courts in this circuit generally
use a percentage of recovery method and supplement it with the lodestar method as a
cross-check." *Feinberg v. T. Rowe Price Group Inc*., 610 F.Supp.3d 758, 771 (D. Md.
Jul. 6, 2022); s*ee Donaldson v. Primary Residential Mortg., In*c., 2021 WL 2187013, at
*8 (D. Md. May 28, 2021). In fact, the percentage of recovery method is
"overwhelmingly" preferred by courts in the Fourth Circuit. *Krakauer v. Dish Network
LLC*, 2018 WL 6305785, at *2 (M.D.N.C. Dec. 3, 2018) (quoting *Phillips v. Triad Guar.
Inc*., 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); *see Decohen v. Abbasi, LLC*,
299 F.R.D. 469, 481 (D. Md. 2014) ("District Courts in the Fourth Circuit . . . use the
percentage of recovery method in common fund cases.").

In ERISA litigation, a one-third fee has repeatedly been found to be reasonable
and consistent with the market rate for attorneys' fee awards from a common fund.

15

*MedStar*, 2024 WL 4110941, at *6-7 (awarding one-third of settlement fund); *In re Biogen, Inc. ERISA Litig.*, No. 1:20-cv-11325-DJC, ECF No. 128, at 7 (D. Mass. Jan. 24, 2024) (same); *Garthwait v. Eversource Energy Servs*. Co., No. 3:20-cv-00902-JCH, at ECF No. 205, at 7 (D. Conn. Sept. 27,2023) (same); *Kelly v. John Hopkins University*, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (collecting cases). In *Kelly*, the court found a one-third fee to be the "market rate" for ERISA and that the "great weight of authority" justified the requested one-third fee. *Id.*; *see Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *2 (M.D.N.C. Sep. 29, 2016) (holding that "a one-third fee is consistent with the market rate in a complex ERISA 401(k) fee case") (collecting cases); *see also Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *21 (D.N.J. Oct. 13, 2010) (same). Plaintiffs' request for a one-third fee award is reasonable under the prevailing method for evaluating requests for attorneys' fees and should be approved in this case.

### 3. The Requested Fees are Justified Under the *Singleton* Factors

Even though the requested fees are consistent with the market rate for an ERISA case like this one, courts in the Fourth Circuit have also assessed requests for attorneys' fees under the following factors: "(1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy[.]" *Singleton v. Domino's Pizza LLC*, 976 F. Supp. 2d at 682 (D. Md. 2013);[2] *see*

---

[2]While the Fourth Circuit has not adopted a singular approach, District courts have found the trend among courts of appeal favor the percentage and look to the *Singleton* factors to

*Feinberg* 610 F. Supp. 3d at 771; *Kelly*, 2020 WL 434473, at *2. Applying these factors, the requested one-third fee is justified.

*The Results Obtained for the Settlement Class.* Class Counsel's hard work, skill and persistence at litigating this matter at the highest quality level (and dedicating the resources to do so) for four years achieved an excellent result for the Settlement Class. *See* Berin Decl., at ¶ 5. The result obtained is "the most critical factor in determining the reasonableness of a fee award" and further supports finding the requested fee reasonable. *Kelly*, 2020 WL 434473, at *5 (citing *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010). The Settlement represents a substantial percentage of the losses incurred by the Plan for those claims which survived summary judgment, and compares favorably to settlements in similar ERISA cases. *See id.*, at ¶¶ 18-20.

*The Quality, Skill, and Efficiency of Class Counsel.* Class Counsel demonstrated the highest level of skill and quality in litigating this case to the Settlement. "It takes skilled counsel to manage a nationwide class action, carefully analyze the facts and legal claims and defenses under ERISA and bring a complex case to the point at which settlement is a realistic possibility." *Smith*, 2007 WL 119157, at *2; *see Tussey v. Abb, Inc.*, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012) (complex ERISA litigation requires "specialized expertise"); *see In re Wachovia Corp. ERISA Litig.*, 2011 WL 5037183, at *4 (W.D.N.C. Oct. 24, 2011) (ERISA litigation requires specialized skills to litigate a case to a successful recovery). Class Counsel's diligent prosecution of this case

_____

analyze whether a percentage award is warranted. *See Graham v. Famous Dave's of Am., Inc.*, 2022 WL 17584274, at *10 (D. Md. Dec. 12, 2022).

17

to a successful result against experienced defense counsel which spared no effort in defense of this action demonstrates the high quality of services provided to the Settlement Class. *See MedStar*, 2024 WL 4110941, at \*6-7.

*The Risk of Nonpayment.* Class Counsel assumed a substantial risk of nonpayment as ERISA fiduciary breach actions are often dismissed by courts at various stages of proceedings. *See* Berin Decl., at ¶ 17*; see Kelly*, 2020 WL 434473, at \*5 (collecting cases); *Hall v. Capital One Fin. Corp.*, 2023 WL 2333304. (E.D. Va. Mar. 1, 2023), *appeal dismissed*, No. 23-1357, 2023 WL 6388629 (4th Cir. May 12, 2023). In fact, ERISA fiduciary breach actions involving the same target date funds have been dismissed with no recovery. *See, e.g.*, *Smith v. CommonSpirit Health,* 37 F.4th 1160 (6th Cir. 2022). Likewise, the partial dismissal of certain of Plaintiffs' claims at summary judgment demonstrates the risk inherent in these claims.

*Reaction of the Settlement Class.* No objections to the Settlement, fee request, or other requested awards have been filed, although notice was provided of these anticipated applications. *See* Berin Decl., at ¶ 10; *see* Vieira Decl., at ¶ 15. "The lack of objections tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by class counsel." *Singleton*, 976 F. Supp. 2d at 684. The positive reception by the Settlement Class favors approval.

*Awards in Similar Cases.* Plaintiffs' request for a one-third fee award is consistent with market rates in similar ERISA cases. *See MedStar*, 2024 WL 4110941, at \*8 (awarding a one-third fee "is in line with fee awards in other ERISA litigation."); *Kruger*,

18

2016 WL 6769066, at *2; *see also Kelly*, 2020 WL 434473, at *3. For the same reasons, Class Counsel's request for a one-third fee is reasonable.

*The Complexity and Duration of the Case.* Courts consider the time between the filing of the complaint and settlement, the amount of motion practice, and the amount and nature of discovery." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 465 (D. Md. Jan. 31, 2014) (citing to *Jones v. Dominion Resources Services, Inc.*, 601 F.Supp.2d 756, 761 (S.D.W. Va. Mar. 6, 2009). These factors all support approval since, for the last four years, Class Counsel zealously prosecuted this case, conducted extensive discovery, took and defended numerous fact and expert depositions, pursued third party discovery, and overcame motions to dismiss and for summary judgment. *See* Berin Decl. at ¶¶ 18-20. Class Counsel's hard-fought efforts to litigate nearly to trial led to its favorable outcome which justifies the requested fees. *See id*.

*Public Policy.* The policy concern involves balancing the public's perception that class action attorneys receive "too much" of the funds to compensate victims, against incentivizing attorneys to take on cases to vindicate rights that would otherwise go unprotected. *See Singleton*, 976 F.Supp.2d at 687; *Boyd*, 299 F.R.D. at 466. In ERISA cases, one-third fee requests have been approved as reasonable, consistent with public policy, and not "too much" of the settlement funds. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010); *see also Spann v. AOL Time Warner Inc.*, 2005 WL 1330937, at *3, 9 (S.D.N.Y. Jun. 7, 2005). The same holds here, as enforcement of the Plan's rights relied on Plaintiffs and Class Counsel coming forward to advance the interests of the Plan and the Settlement Class. In addition, given the requested lodestar

19

multiplier, as discussed below, Class Counsel would not receive an undue windfall if the application is granted.

### 4.  The Requested Award is Supported by a Lodestar Cross-Check

It is not necessary for the Court here to conduct a lodestar analysis as the percentage of recovery method is favored in this District, and a one-third award is recognized as the appropriate "market rate" for ERISA litigation.  *See Kruger v. Novant Health, Inc*., 2016 WL 6769066, at *4.  Still, Plaintiffs' requested fees are very reasonable compared to the lodestar calculation of time expended at reasonable billing rates, adjusted by a multiplier for the complexity of this ERISA class litigation.  In fact, Plaintiffs' requested fee award falls below the range of acceptable multipliers.

In total, Class Counsel has spent over 2,670 hours litigating this action to date, resulting in a total lodestar of $1,504,761.50, based on the attorney and paraprofessional time expended at reasonable market rates.  *See id*., at ¶ 16.  The requested one-third fee represents a multiplier of less than *.78* applied to Class Counsel's lodestar.  This does not include additional time that will be spent supervising the remainder of the settlement administration process.  *See id.*  The lodestar cross-check is intended solely to determine whether a proposed fee award is within a reasonable multiplier, like here, and should not disqualify an otherwise valid percentage recovery.  *See Boyd*, 299 F.R.D. at 467; *see also Skochin v. Genworth Financial LLC*, 2020 WL 6708388, at *10 (E.D. Va. Nov. 13, 2020) (lodestar cross-check is secondary method of assessing reasonableness).[3]

_____

[3] Class Counsel's hours are supported by the billing records maintained by each firm. *See* Berin Decl., at ¶ 16 n.3.  In addition, Class Counsel's hourly rates were recently approved

Courts have generally held that fee requests with lodestar multipliers of up to four are common and will be approved as reasonable. *See Goldberg v. Marriott PLP Corp.* 33 F. Supp. 434, 439 n. 6 (D. Md. Oct. 22, 1990); *see Krakauer*, 2018 WL 6305785, at *6 (approving a lodestar multiplier of 4.63 times); *Deloach v. Philip Morris Co.*, 2003 WL 23094907, at *7 (M.D.N.C. Dec. 19, 2003) (approving a 4.5 times lodestar multiplier). Similarly, a 2003 survey of 1,120 class actions by confirmed that the lodestar multipliers averaged 3.89. *See* Attorney Awards in Common Fund Cases, 24 CLASS ACTION REP. 4 (2003). Due to their risk and complexity, courts have found that ERISA cases should be assigned a high multiplier. *See Kelly*, 2020 WL 434473, at *6. As Class Counsel's fee request falls within (and, indeed, at the low end of) the standard range of lodestar multipliers, it passes the lodestar cross-check and should be approved.

### C.  Class Counsel Should be Awarded Their Reasonable Expenses

Under Rule 23(h), a court may award nontaxable costs that are authorized by law or the parties' agreement. *See* FED. R. CIV. P. 23(h). An award of litigation expenses is authorized by both the parties' Settlement and consistent with the common fund doctrine. *See* ECF 166-3, (§§ 1.3, 6.1); *Kruger*, 2016 WL 6769066, at *6. "Reimbursement of reasonable costs and expenses to counsel who create a common fund is both necessary and routine." *Savani v. URS Prof'l Solutions LLC*, 1211 F. Supp. 563, 576 (D.S.C. 2015). "The prevailing view is that expenses are awarded in addition to the fee

---

in similar class action litigation. *See MedStar ERISA,* 2024 WL 4110941, at *6-7; *Biogen*, No. 1:20-cv-11325-DJC, ECF No. 128, at 7; *Garthwait*, No. 3:20-cv-00902-JCH, at ECF No. 205, at 7.

percentage." *Smith*, 2007 WL 119157, at *3 (citation omitted).  Reimbursable expenses include court costs, transcript costs, travel, photocopying and electronic storage fees, telephone charges, postage and expert witness fees.  *See In re Mid-Atlantic Toyota Antitrust Litig.*, 605 F.Supp. 440, 448 (D. Md. 1984); *see also Almendarez v. J.T.T, Enters. Corp.*, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010).

Plaintiffs seek an award of Class Counsel's unreimbursed litigation expenses that were incurred in prosecuting this action, which total $241,967.91.  *See* Berin Decl., at ¶ 21.  These include expert witness fees for three highly specialized experts, costs for multiple depositions, filing, photocopying, data storage and other litigation  expenses. *See id.*  Class Counsel advanced these expenses out-of-pocket on contingency and should be awarded reimbursement, as they were all necessary to the effective prosecution of this case.  *See id.*; *see MedStar ERISA*, 2024 WL 4110941, at *9.

### D.  Plaintiffs' Requested Case Contribution Awards Should be Granted Considering Their Efforts for the Plan and Settlement Class

Plaintiffs each seek a case contribution award of $12,500 to fairly compensate them for the substantial time and effort devoted to prosecuting this action for the Class. *See* Berin Decl., at  ¶¶ 23-24.  In assessing contribution awards, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."  *Singleton*, 976 F.Supp.2d at 690.  Plaintiffs each deserve an award because their efforts were integral to the litigation and the favorable result achieved for Settlement Class.  *See id.*

22

The requested contribution awards are reasonable and appropriate for this ERISA litigation. *See Feinberg*, 610 F. Supp. 3d at 774 (approving $15,000 award to named plaintiff); *see Marsh ERISA*, 265 F.R.D. at151 (approving $15,000 each of three named plaintiffs). For complex cases, even higher contribution awards can be appropriate. *See, e.g.*, *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2012 WL 2064907, at *3 (S.D.N.Y. June 7, 2012) (awarding $50,000 each to three plaintiffs); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (collecting cases and awarding $15,000). In fact, another court in the Fourth Circuit recently found that a request for a case contribution award of $15,000—higher than sought here—was "modest." *In MedStar ERISA*, 2024 WL 4110941, at *10.

## IV.    CONCLUSION

The Court should grant the Motion in its entirety.

Dated: October 17, 2024                 Respectfully Submitted,

/s/ *James C. Shah*
James C. Shah
(*Special appearance*)
Alec J. Berin
(*Special appearance*)
John C. Roberts
(*Special appearance*)
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
         ajberin@millershah.com
         jcroberts@millershah.com

23

James E. Miller
(*Special appearance*)
Laurie Rubinow
(*Special appearance*)
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
       lrubinow@millershah.com

Kolin C. Tang
(*Special appearance*)
MILLER SHAH LLP
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

John Szymankiewicz
NC State Bar No. 41623
Matheson & Associates PLLC
127 West Hargett Street, Suite 100
Raleigh, NC 27601
Telephone: (919) 335-5291
Facsimile: (919) 516-0686
Email: john@mathesonlawoffice.com

*Counsel for Plaintiffs, the Plan
and the Settlement Class*